AOC-E-105     Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1



# CIVIL SUMMONS

Case #: **24-CI-00231**  ~~NOT ORIGINAL~~
Court: **CIRCUIT**
County: **OLDHAM**

DOCUMENT

05/13/2024 01:20:09 PM

89195

---

*Plantiff,* **QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL**, *Defendant*

TO: **DOUGLAS HETSCH**

    **ALL AMERICAN CHIMNEY SERVICE**

    **11600 ELECTRON DRIVE**

    **LOUISVILLE, KY 40299**

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

              /s/ Stephen Kaelin, Oldham
              Circuit Clerk
              Date: **4/23/2024**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20_____      _____
                                              Served By

                                             _____
                                             Title

*Presiding Judge: HON. JERRY D. CROSBY II (612409)*

*CI : 000001 of 000001*





*eFiled*

AOC-E-105    Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **24-CI-00231** NOT ORIGINAL
Court: **CIRCUIT**
County: **OLDHAM** 05/13/2024 01:20:32

89195

---

*Plantiff,* **QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL**, *Defendant*

TO: **C. DODD HARRIS IV**

**HARRIS LAW OFFICE, PLLC**

**9462 BROWNSBORO ROAD, #260**

**LOUISVILLE, KY 40241**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Stephen Kaelin, Oldham
Circuit Clerk
Date: **4/23/2024**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____     _____

Served By

_____

Title

Presiding Judge: HON. JERRY D. CROSBY II (612409)

CI : 000001 of 000001

Summons ID: @90005624925
CIRCUIT: 24-CI-00231 Certified Mail
QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL



Page 1 of 1





AOC-E-105    Sum Code: CI
Rev. 9-14
Commonwealth of Kentucky
Court of Justice    *Courts.ky.gov*

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

Case #: **24-CI-00231** NOT ORIGINAL
Court: **CIRCUIT**
County: **OLDHAM**    05/13/2024 01:20:57 PM

89195

*Plantiff,* **QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL**, *Defendant*

TO: **MELISSA PRINCE**

**BAKER, BLOOMBERG & ASSOCIATES**

**20501 KATY FREEWAY, SUITE 240**

**HOUSTON, TX 77450**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Stephen Kaelin, Oldham
Circuit Clerk
Date: **4/23/2024**

<div style="border:1px solid">

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

</div>

Presiding Judge: HON. JERRY D. CROSBY II (612409)

CI : 000001 of 000001

Summons ID: @90005624926
CIRCUIT: 24-CI-00231 Certified Mail
QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL



Page 1 of 1



DOCUMENT

| AOC-E-105          Sum Code: CI | | Case #: **24-CI-00231**   ~~NOT ORIGINAL~~ |
| --- | --- | --- |
| Rev. 9-14 |  | Court: **CIRCUIT** |
| Commonwealth of Kentucky | | County: **OLDHAM** |
| Court of Justice    *Courts.ky.gov* | | |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL***, Defendant*

TO:  **MELISSA PRINCE**

   **BAKER, BLOOMBERG & ASSOCIATES**

   **20501 KATY FREEWAY, SUITE 240**

   **HOUSTON, TX 77450**

The Commonwealth of Kentucky to Defendant:

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Stephen Kaelin, Oldham
Circuit Clerk
Date: **4/23/2024**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____

_____
Served By

_____
Title

Summons ID: @90005624927
CIRCUIT: 24-CI-00231 Long Arm Statute – SOS - Restricted Delivery
QUINN, CHRISTOPHER VS. HETSCH, DOUGLAS ET AL

 Page 1 of 1    

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

NO. _____

OLDHAM CIRCUIT COURT
DIVISION_____
*Filed Electronically*

Christopher Quinn                                    PLAINTIFF

v.

Douglas Hetsch                                    DEFENDANTS
*d/b/a* All American Chimney Service, LLC
Serve:
      Douglas Hetsch, President
      11600 Electron Drive
      Louisville, KY 40299

C. Dodd Harris IV
Serve:
      C. Dodd Harris IV
      Harris Law Office, PLLC
      9462 Brownsboro Rd., #260
      Louisville, KY 40241

Melissa Prince
Serve:
      Melissa Prince
      Baker, Bloomberg and Associates
      20501 Katy Freeway, Suite 240
      Houston, TX 77450

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

    1.    This is a complaint (the "Complaint") by Plaintiff Christopher Quinn against the

following Defendants:

    a) Defendant Douglas Hetsch *d/b/a* All American Chimney Service, LLC ("Hetsch")

pursuant to the Kentucky Consumer Protection Act, KRS 367.110 *et seq.* ("KCPA") for Plaintiff's

claims and damages arising from Defendant Hetsch's defective chimney and fireplace construction

at Plaintiff's house which damaged Plaintiff, and for his filing of public record a false and illegal

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Filed                24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

mechanics' lien against Plaintiff's real property. Plaintiff seeks his actual damages; consequential damages; and incidental damages for Defendant Hetsch's breach of any purported contract; and further seeks his actual damages, consequential damages, incidental damages punitive damages, court costs and attorney fees for Defendant Hetsch's willful violations of the KCPA.

Plaintiff also seeks injunctive relief against Defendant Hetsch to enjoin Defendant Hetsch from maintaining a false, illegal mechanics' lien against Plaintiff's real property.

b) Defendant C. Dodd Harris IV ("Harris") for violation of Plaintiff's rights pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") for his/her attempt to collect a debt allegedly owed by Plaintiff by false, misleading, or unfair practice since the purported "Lienor," All American Chimney Service, LLC does not exist as a legal entity; and because Defendant Harris claims amounts of attorney fees and costs are owed when no amounts for attorney fees and costs have been adjudicated, liquidated and awarded and are thus not owed. Plaintiff seeks maximum statutory damages against Defendant Harris pursuant to 15 U.S.C. §1692k(a)(2)(A), plus his attorney's fees and costs. Plaintiff also seeks injunctive relief against Defendant Harris to obtain release of the false, illegal mechanics' lien recorded by Defendant Harris against Plaintiff's real property on behalf of a non-existent entity.

c) Defendant Melissa Prince ("Prince") for violation of Plaintiff's rights pursuant to the FDCPA for her/his attempt to collect a debt allegedly owed by Plaintiff that is not owed; for communicating directly with Plaintiff when Plaintiff was represented by undersigned counsel; and for her attempt to collect a debt in Kentucky by false, misleading, or unfair practice by practicing law in Kentucky when she is not licensed to practice law in Kentucky in violation of Kentucky statutes and in violation of Kentucky Supreme Court rules. Plaintiff seeks maximum statutory damages against Defendant Prince pursuant to 15 U.S.C. §1692k(a)(2)(A), plus his attorney's fees

Filed                24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

and costs.

Plaintiff additionally requests that the Court grant him punitive damages against Defendant Prince for her outrageous, illegal conduct in practicing law in Kentucky without a license in violation of KRS 524.130 and requests that the Court grant him punitive damages against Defendant Harris in the amount of $10,000.00.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to KRS 23A.010; the Kentucky Consumer Protection Act, KRS 367.220(1); and pursuant to the FDCPA, 15 U.S.C. §1692k(d), which grants jurisdiction to state courts of competent jurisdiction. Venue is proper because the nucleus of relevant facts and events that affected and/or damaged Plaintiff as a Kentucky citizen consumer occurred in Oldham County, Kentucky.

## PARTIES

3.      Plaintiff Christopher Quinn is a natural person who at all times relevant to the events giving rise to his claims alleged herein against Defendants in this action resided in Oldham County, Kentucky at 5315 Arrowshire Drive, LaGrange, Kentucky.

4.      Defendant Douglas Hetsch is an individual who holds himself out as a chimney and fireplace construction contractor residing at 2211 Claymore Circle, Louisville, KY 40245 and is a "person" within the meaning of the KCPA, KRS 367.110(1).

5.      Defendant Hetsch does business as a chimney and fireplace construction contractor under the name "*All American Chimney Service, LLC*" ("AACS"). However, AACS IS NOT a limited liability company that legally exists, and no legal entity named "*All American Chimney Service, LLC*" is registered with the Kentucky Secretary of State.

6.      Defendant C. Dodd Harris IV ("Harris") is a licensed attorney in Kentucky whose

principal office is located at 9462 Brownsboro Road #260, Louisville, KY 40241. Harris is a "debt collector" within the meaning of the FDCPA inasmuch as he regularly collects debts of another from Kentucky consumers as defined at 15 U.S.C. §1692a(6)

7.      Defendant Melissa Prince ("Prince") is a resident of Texas and an attorney at law whose principal office is located at 20501 Katy Freeway, Suite 240, Houston, TX 77450. Prince is not a licensed attorney in the Commonwealth of Kentucky but holds herself out as a "debt collector" as defined by the FDCPA and is a "debt collector" within the meaning of 15 U.S.C. §1692a(6). Defendant Prince is also a "person" within the meaning of the KCPA, KRS 367.110(1).

## STATEMENT OF FACTS

8.      On or about January 13, 2023, Plaintiff Christopher Quinn ("Quinn") signed a purported estimate naming the contractor with whom he was doing business as a legal entity named "All American Chimney Service, LLC" (hereafter "AACS") to provide chimney repair service (the "Chimney Project") to his house located at 5315 Arrowshire Drive, LaGrange, KY (the "House").

9.      AACS is not a legal entity, and no person, employee or company officer signed the purported Chimney Project contract on behalf of AACS. Therefore, as a matter of law, no contract for the Chimney Project between Plaintiff and AACS ever existed and any purported contractual obligations between Plaintiff and AACS are null and void.

10.     AACS submitted an estimate dated January 13, 2023 to Plaintiff on behalf of Defendant Douglas Hetsch ("Hetsch") to Plaintiff for the Chimney Project (the "AACS Estimate") that set out the scope of work and the charges for the work and materials for the Chimney Project. The AACS Estimate referred to and incorporated by reference additional pages titled "Terms & Conditions All American Chimney Service LLC" (the "AACS Terms & Conditions"), which

4

Filed                24-CI-00231 04/23/2024            Stephen Kaelin, Oldham Circuit Clerk

together formed the purported contract (the "AACS Contract") between Plaintiff and Defendant Hetsch *d/b/a* AACS. A copy of the AACS Estimate and the AACS Terms & Conditions are filed together as "Exhibit A" to this Complaint.

11.    After a delay of more than six (6) months in starting work on the Chimney Project, AACS began work on the House in August of 2023. The work by AACS languished for over six (6) months due to changes in the scope of work AACS claimed necessary by applicable building code as well as the addition of rebuilding of the interior fireplace to the scope of work.

12.    During AACS's interior work of rebuilding the fireplace on the Chimney Project, AACS falsely represented to Plaintiff that AACS could not rebuild the fireplace as it existed originally, and that the only options available to Plaintiff were either a) accept a custom engineered firebox insert; b) add a wood burning stove; or c) convert the fireplace to gas. At that time Plaintiff made clear he did not like or want any of the options advocated by AACS, but AACS told him these options were his only choices, which on September 18, 2023 AACS estimated to cost an additional $7,765.12. A copy of the AACS estimate to manufacture and install the firebox (the "Firebox Estimate") is filed herewith as "Exhibit B" to this Complaint.

13.    Because of, and in reliance upon, the false yet purported professional representations of AACS as to Plaintiff's limited options, Plaintiff allowed the engineered firebox to go forward which AACS claims added $7,765.12 additional expense/cost to the original estimate cost of the Chimney Project.

14.    All work performed on the Chimney Project, and any consequent alleged debt created by AACS's work on the Chimney Project, arose out of a transaction whose services were performed primarily for personal, family, or household purposes, making any alleged debt arising out of AACS's work on the Chimney Project a "debt" within the meaning of the FDCPA, 15

5

U.S.C. §1692a(5).

15.    The creation of the AACS Contract and the Firebox Estimate, and AACS's work on the Chimney Project, constitute "trade" and "commerce" within the meaning of the KCPA, KRS 367.110(1).

16.    Thereafter, during an approximately three (3) month period when AACS stopped working on Plaintiff's Chimney Project, Plaintiff received a second opinion on the Chimney Project from a professional chimney contractor, Certified Chimney Experts ("CCE") and its owner, David York, who advised Plaintiff that the custom engineered firebox insert was not necessary.

17.    On or about February 19, 2024, Plaintiff requested and received an inspection report (the "CCE Report") after extensive evaluation by CCE of the partial work performed on the Chimney Project by Defendant AACS. The CCE inspection report identified multiple quality of workmanship issues in the work performed to date by AACS that failed to meet key construction and masonry standards resulting in serious and significant defects. A copy of the CCE Inspection Report (the "CCE Inspection Report") is filed herewith as "Exhibit C" to this Complaint.

18.    The defects identified in the CCE Inspection Report include but are not limited to the following:

a) *Inconsistent width of mortar joints and thickness between masonry courses.*  The mortar joints of the subject chimney are contrary to the guidelines set forth by ASTM C270-20 "Standard Specification for Mortar for Unit Masonry" which defects can lead to non-uniform load distribution and can affect the structural integrity of the chimney;

b) *Improperly sized and cut bricks.* The chimney repair by AACS used bricks inappropriately cut into smaller sizes resulting in an irregular pattern that diverges from the

6

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

ASTMC216-20 "Standard Specification for Facing Brick". This defect has not only led to an aesthetically displeasing appearance of the subject chimney but also compromised the structural stability due to the large mortar joints created by AACS within the same course.

c) *Out of square corners and irregular course alignment.* The AACS brick work on the subject Chimney Project was defective in creating mis-aligned brick courses; corners that are not square; and courses that project out from the main structure by as much as 1.00 inch. This defect may have compromised the overall structural integrity of the subject Chimney Project and is not in compliance with the 'Building Code Requirements for Masonry Structures (TMS 402). Such defect caused by AACS creates vertical mis-alignment and uneven load distribution which could lead to structural failure.

19.     CCE's extensive onsite review and evaluation of the work AACS had performed on the subject Chimney Project, which identified multiple significant and serious quality of workmanship issues and defects in AACS's work "that fails to meet several key construction and masonry standards", led CCE to conclude that "[t]he rebuild of the chimney has been conducted negligently, with multiple departures from accepted masonry practice. The workmanship displayed does not align with the standards expected in the industry and poses significant concerns regarding both safety and structural soundness. It is imperative that a licensed masonry contractor with experience in chimney construction be employed to rectify these issues." Exhibit C, pp. 13-14.

20.     As a result of AACS's poor quality of workmanship and the defects such work caused, partial deconstruction and remediation of AACS's work on the Chimney Project was necessary.

21.     On February 22, 2024, CCE provided Plaintiff a scope of work and estimate to

7

Filed 24-CI-00231 04/23/2024 Stephen Kaelin, Oldham Circuit Clerk

deconstruct and rebuild to the start over point (the "Deconstruct Estimate") caused by AACS's defective work so the Chimney Project could start over, which estimated the cost for such work at $7,200. A copy of the Deconstruct Estimate is filed herewith as "Exhibit D."

22.    Plaintiff and Defendant Hetsch exchanged email communications in late January of 2024 seeking to resolve the issues between them regarding the Chimney Project but no resolution was reached. On Wednesday, January 31, 2024 Plaintiff advised Defendant Hetsch he desired to "part ways and agree that nothing is owed by either party. Thus, Plaintiff offered that he was willing to absorb the costs of the necessary deconstruction and rebuild and Defendant Hetsch would absorb his costs expended on the defective work of the Chimney Project. Plaintiff further advised if this offer to settle was not agreeable he intended to obtain an attorney. *See* email communications between Plaintiff and Defendant Hetch filed herewith as "Exhibit E."

23.    On February 1, 2024 Plaintiff Hetsch responded to Plaintiff's offer of a mutual walk-away by email and admitted there were "a few area's that need to be addressed which our contract holds us to." Defendant Hetsch further stated that "[y]our current bill with us is 12-14K if you cancel, according to our contract. Seeing we are not unreasonable and admit some area near the chimney top need to be corrected, our BOTTOM dollar is 8K, and we both walk away. This is a onetime offer". (font and all caps original) (*See Id.* Exhibit E)

24.    On January 30, 2024, Defendant Hetsch emailed Plaintiff and stated "We would like to get this resolved as soon as possible. Please send us the proposals you mentioned?" However Plaintiff had no other proposals except the mutual walk-away he offered in the email communication he sent to Defendant Hetsch on Wednesday, January 31, 2024. (*See Id.* Exhibit E)

25.    On February 20, 2024, Plaintiff by counsel advised Defendant Hetsch that he had retained undersigned counsel to represent him "specifically in response to the email sent by you

8

on February 19, 2024 on behalf of a "JC Services, LLC" in which email you demanded payment to JCS by Mr. Quinn of $8,000 under threat of legal action if not paid." A copy of undersigned counsel's letter advising of his representation of Plaintiff is filed herewith as "Exhibit F."

26.     Defendant Hetsch received the February 20, 2024 letter of undersigned counsel advising Defendant Hetsch that Plaintiff was represented by counsel on February 21, 2024. A copy of the tracking information showing delivery to Defendant Hetsch is filed herewith as "Exhibit G."

27.     Then on March 4, 2024, Defendant C. Dodd Harris IV, on behalf of Defendant Hetsch, recorded a mechanics' lien (the "Lien") against Plaintiff's real property on behalf of the non-existent AACS with the County Clerk of Oldham County, Kentucky at Book L20, Pages 159-161. Harris thereby took an act to collect a debt that Harris had no legal right to take in violation of multiple sections of the FDCPA, including but not limited to 15 U.S.C. §1692e(2)(A), §1692e(5), and §1692f(1).

28.     Further, Defendant Melissa Prince ("Prince") sent an email message directly to Plaintiff on April 18, 2024 (the "Prince Email") in an attempt to collect amounts alleged to be owed to Hetsch and AACS on the Chimney Project, despite undersigned counsel's letter to Defendant Hetsch of February 20, 2024 advising of his representation of Plaintiff with regard to the Chimney Project and requiring all communications regarding the Chimney Project be directed to undersigned counsel. The Prince Email stated that "her office represents All American Chimney Services, LLC in regard to a delinquent invoice for $24,620.47." A copy of the Prince Email is filed herewith as "Exhibit H."

29.     However Defendant Prince is not a licensed attorney in Kentucky and therefore her Prince Email to Plaintiff attempting to collect a debt from Plaintiff for the non-existent AACS violated multiple sections of the FDCPA, including but not limited to 15 U.S.C. §1692c(a)(2),

§1692e(2)(A), §1692e(5), and §1692f(1).

30.    Further, the conduct of Defendant Prince in holding herself out as a licensed attorney in Kentucky, when she was not, to collect a debt not owed in both substance and amount constitutes violation of the KCPA as an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

31.    The collection conduct of Defendants Harris and Prince each separately violated Plaintiff's rights under the FDCPA pursuant to multiple provisions the FDCPA and the protections to consumers intended by Congress enacting the FDCPA.

## CLAIMS FOR RELIEF

### I.    Claims Against Defendant Douglas Hetsch *d/b/a* All American Chimney Service, LLC

#### A. Breach of Contract

32.    Plaintiff maintains that, as a matter of law, there was no contract between Plaintiff and AACS or any other entity or person as a matter of law since AACS does not exist as a legal entity. However, to the extent there was a contract with any entity or person, Defendant Hetsch breached the contract by the multiple quality of workmanship issues that failed to meet key construction and masonry standards resulting in serious and significant defects caused by AACS as the alter ego of Defendant Hetsch, rendering Defendant Hetsch liable to Plaintiff for his actual damages of the cost of deconstruction of the defective work put in place by Defendant Hetsch in the amount of $7,200, plus his attorney fees and costs of litigation including court costs.

#### B. Violations of the KCPA

33.    The foregoing actions and omissions of Defendant Hetsch constitute violations of the Kentucky Consumer Protection Act, KRS 367.110 *et seq.*

34.    The purported transaction between Plaintiff and the non-existent AACS as the alter

10

Filed                    24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

ego of Defendant Hetsch constitutes conduct of "trade" and "commerce" within the meaning of the KCPA.

35.     The transaction and funding of the transaction between Plaintiff and the non-existent AACS as the alter ego of Defendant Hetsch were used for personal, family, and/or household purposes.

36.     Defendant Hetsch's use of the non-existent AACS to enter into a purported contract with Plaintiff as a consumer knowing that AACS did not exist as a legal entity is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

37.     Defendant Hetsch's employment of Defendants C. Dodd Harris IV and purported attorney Melissa Prince to attempt to coerce payment from Plaintiff by Harris filing a mechanic's lien for the non-existent AACS against the real property of Plaintiff and by Prince directly sending a collection email to Plaintiff when Hetsch knew Plaintiff was represented by counsel, and employing Prince to falsely hold herself out as an attorney in Kentucky to collect an amount Prince claimed owed by Plaintiff of $24,620.47 to the non-existent AACS, is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

38.     Defendant Hetsch's false representation, by and through his alter ego but non-existent AACS and the employees of AACS, to Plaintiff that his only option to continue having a functioning fireplace was to pay for a pre-engineered firebox at an additional cost of more than $7,765.12 when in fact that representation was false is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

39.     Defendant Hetsch's fronting a non-existent entity with the legal designation of

Filed                    24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

"LLC" connotating the existence of a legal entity when in fact Hetsch knew no such legal entity existed constitutes willful, knowing violation of the KCPA; and further by Hetsch's admission of his knowing the work of AACS on the Chimney Project was defective yet claiming to be owed $24,620.47, Defendant Hetsch is therefore liable to Plaintiff for his actual damages, for punitive damages of twice the amount of Plaintiff's actual damages and thus $14,400 in punitive damages, as well as his attorney's fees and costs.

40.     Plaintiff further asks the Court to issue an injunction against Defendant Hetsch and order Hetsch to release the improper mechanic's lien recorded by AACS against Defendant in Oldham County, Kentucky.

## II.    Claims Against Defendant C. Dodd Harris, IV

41.     The foregoing acts and omissions of Defendant C. Dodd Harris IV ("Harris") constitute violations of the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

42.     Defendant Harris violated the FDCPA by recording a mechanic's lien on March 4, 2024 against the real property owned by Plaintiff in Oldham County, Kentucky, thereby attempting to collect a debt allegedly owed by Plaintiff by false, misleading, or unfair practices since the purported "Lienor" named in the mechanic's lien, All American Chimney Service, PLLC, does not exist as a legal entity.

43.     Defendant Harris's recording of the mechanic's lien constituted an act to colllect a debt that Defendant Harris had no legal right to take in violation of multiple sections of the FDCPA, including but not limited to 15 U.S.C. §1692e(2)(A), §1692e(5) and §1692f(1).

44.     By taking such improper action to collect against Plaintiff, Defendant Harris is liable to Plaintiff for the maximum statutory damages under the FDCPA of $1,000.00 pursuant to

15 U.S.C. §1692k(a)(2)(A) and his court costs and attorney fees as a matter of law pursuant to 15 U.S.C. §1692k(a)(3).

45.     Plaintiff further asks the Court to issue an injunction against Defendant Harris and order Harris to release the improper mechanic's lien recorded by Harris against Defendant with the County Clerk of Oldham County, Kentucky.

### III.   Claims Against Defendant Melissa Prince

#### A.   FDCPA Violations

46.     The foregoing acts and omissions of Defendant Melissa Prince ("Prince") constitute violations of the FDCPA, which violations each created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.

47.     On April 18, 2024, Plaintiff received the Prince Email directly from Defendant Prince stating "her office represents All American Chimney Services, LLC in regard to a delinquent invoice for $24,620.47". Although not a licensed attorney in Kentucky, Prince sought to collect from Plaintiff the purported debt on behalf of the non-existent AACS.

48.     In so doing Prince not only violated multiple sections of the FDCPA, including but not limited to 15 U.S.C. §1692c(A)(2), §1692e(2)(A), §1692e(5) and §1692f(1), but also violated Kentucky law and the ethical rules of the Kentucky Supreme Court in practicing law without a license to do so in the Commonwealth of Kentucky.

49.     Defendant Prince is liable to Plaintiff for the maximum statutory damages under the FDCPA of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) and his court costs and attorney fees as a matter of law pursuant to 15 U.S.C. §1692k(a)(3).

#### B. KCPA Violations

50.     The foregoing actions and omissions of Defendant Prince constitute violations of

13

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

the Kentucky Consumer Protection Act, KRS 367.110 *et seq.*

51.   The purported transaction between Plaintiff and the non-existent AACS at the basis of the alleged debt Prince sought to collect from Plaintiff constitutes conduct of "trade" and "commerce" within the meaning of the KCPA.

52.   The transaction and funding of the transaction between Plaintiff and the non-existent AACS were used for personal, family, and/or household purposes.

53.   Defendant Prince's holding herself out as a licensed attorney in Kentucky, when she was not, to collect a debt not owed in both substance and amount, is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

54.   Plaintiff requests that the Court grant him his actual damages against Defendant Prince; punitive damages against Defendant Prince for her outrageous, illegal conduct in practicing law in Kentucky without a license in violation of KRS 524.130 in the amount of $10,000.00; plus his attorney's fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christopher Quinn requests that the Court grant him relief as follows:

1.   Award Plaintiff his actual damages against Defendant Douglas Hetsch *d/b/a* All American Chimney Services, LLC, for breach of contract in the amount of $7,200;

2.   Award Plaintiff against Defendant Douglas Hetsch his actual damages in the amount of $7,200, punitive damages in the amount of twice his actual damages of $14,400, and his attorney's fees and costs for Defendant Douglas Hetsch's violations of the KCPA;

3.   Grant Plaintiff an injunction against Defendant Douglas Hetsch *d/b/a* All American

14

Chimney Services, LLC for maintaining an invalid, improper mechanic's lien against Plaintiff for the non-existent AACS;

4.      Award Plaintiff the maximum statutory damages of $1,000.00 against Defendant C. Dodd Harris IV pursuant to the FDCPA and as a matter of law his attorney fees and court costs as provided for by the FDCPA;

5.      Grant Plaintiff an injunction against Defendant C. Dodd Harris IV for maintaining an invalid, improper mechanic's lien against Plaintiff for the non-existent AACS;

6.      Award Plaintiff the maximum statutory damages of $1,000.00 against Defendant Melissa Prince pursuant to the FDCPA and as a matter of law his attorney fees and court costs as provided for by the FDCPA;

7.      Award Plaintiff punitive damages against Defendant Melissa Prince for her outrageous, illegal conduct in practicing law in Kentucky without a license in violation of KRS 524.130 in the amount of $10,000.00;

8.      A trial by jury; and

9.      Any other relief which the Court may deem Plaintiff entitled.

Submitted by:

/s/ James R. McKenzie
James R. McKenzie, KBA 81957
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:    (502) 371-2179
Fax:    (502) 257-7309
jmckenzie@jmckenzielaw.com

15

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# A

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

All American Chimney Service, LLC
11600 Electron Drive
Louisville, KY 40299

**BILL TO**
Chris Quinn
5315 Arrowshire Drive
La Grange, KY 40031 USA

| | |
|---|---|
| ESTIMATE | ESTIMATE DATE |
| 51722534 | Jan 13, 2023 |

**JOB ADDRESS**                          Job: 51146845
Chris Quinn
5315 Arrowshire Drive
La Grange, KY 40031 USA

| TASK | DESCRIPTION | QTY | PRICE | TOTAL |
|---|---|---|---|---|
| 10x25 Non-Ins Reline | • Stainless relining kits include a stainless steel liner and mesh bottom plate.<br>• The clay flue tiles venting your fireplace are damaged to the point that they can no longer completely contain flue gases.<br>• Per NFPA 211 code 14.9 "*The liner shall be either removed and replaced, repaired, or relined with a listed liner system or other approved material.*"<br>• This repair will ensure the fireplace flue will have one continuous passageway for the exhaust to vent through.<br>• *Does not include pour insulation, labor for installation, or other components not listed.* | 1.00 | $2,810.06 | $2,810.06 |
| Pour In Insulation | • According to code and to increase efficiency and draft, the stainless liner must be surrounded by a minimum 1/2" of poured insulation.<br>• Once the liner has been installed, we will mix and pour insulation in around the liner. | 2.00 | $184.34 | $368.68 |
| Tile Removal 15-25ft | • The existing clay flue tile liner is not large enough to allow the new liner to be installed inside it.<br>• In order to make room for the appropriately sized new stainless steel liner, we must break out and remove all the existing clay flue tiles and dispose of the debris. | 1.00 | $1,683.00 | $1,683.00 |
| FP Liner Install | Labor to install liner, insulation, and components | 1.00 | $1,650.00 | $1,650.00 |

`Filed`   24-CI-00231 04/23/2024   Stephen Kaelin, Oldham Circuit Clerk

| | | | | |
|---|---|---|---|---|
| Labor | • *Priced for completion of job* | | | |
| PCR CH | • Third degree (glazed) creosote was found inside your smoke chamber. | 1.00 | $1,464.95 | $1,464.95 |

PCR CH
- Third degree (glazed) creosote was found inside your smoke chamber.
- Third degree creosote looks like a shiny tar coating the inside of the chimney, and it is extremely flammable. The creosote hardens and is repeatedly recoated when the fireplace or wood stove is used.
- We recommend coating the entire inside of the smoke chamber with Poultice Creosote Remover (PCR) compound and left to dry for a period of 48-72 hours. We will return after that time and power clean the flue to remove all compound and glazed creosote
- Cost includes materials and labor for PCR application as well as return trip for sweeping the compound and creosote.

----------------------------------

Poultice Creosote Remover (PCR)

- Eliminates the need for dangerous and potentially destructive cleaning methods
- Completely removes 3rd degree glazed creosote

| Parging SM | | 1.00 | $1,178.05 | $1,178.05 |
|---|---|---|---|---|

- The smoke chamber inside the fireplace is **not parged smooth**. There are ledges and gaps/holes that will increase turbulence and lead to heavier creosote buildup.
- According to NFPA 211 code 11.2.1.13 *"The inner surfaces of the smoke chamber shall be parge-coated smooth, with an insulating refractory mortar."*

----------------------------------

Recommended repairs:

- Remove the existing cast iron damper and enough firebricks to gain access to the smoke chamber.
- We will apply Chamber Safe cerfractory cement to the entire inside of the smoke chamber until smooth.

Chamber Safe:
- UL Listed (UL 1777, ORD 2505)
- Improves Draft
- Adds Structural Strength
- Resists Temperatures Up to 2500°F

| Lock Top Damper 13x13 | | 1.00 | $675.00 | $675.00 |
|---|---|---|---|---|

- The existing damper is deteriorated, damaged, missing, or must be removed for chimney repairs.
- In order to have a fully functioning fireplace a new lock top damper must be installed at the top of the chimney.

Estimate #51722534

`Filed`   24-CI-00231 04/23/2024   Stephen Kaelin, Oldham Circuit Clerk

--------------------------------

- A lock top damper is a low-profile top mounted damper that also serves as a chimney cap.
- In the closed position, the damper is virtually invisible from the ground.
- The damper provides a tight, gasketed fit with an energy efficient seal.
- The damper seals out weather, insects, birds and animals from entering the flue.
- A slight pull on the chain releases the spring-loaded top into the open position. When open, this damper design is least obstructive to exiting smoke.
- Price includes installation of the damper, 30' cut-to-fit cable, fireplace bracket, and cool touch spring handle

| | |
|---|---|
| POTENTIAL SAVINGS | $0.00 |
| SUB-TOTAL | $9,829.74 |
| TAX | $0.00 |
| TOTAL | $9,829.74 |
| EST. FINANCING | $163.17 |

WE HAVE A LOW PRICE GUARANTEE FOR SERVICES OFFERED*

Thank you for your business!
CUSTOMER AUTHORIZATION

You are hereby authorized to return a formal contract between us to accomplish the work described in the above proposal, for which the undersigned agrees to pay the $9,829.74 which is stated in said proposal and according to the Terms and Conditions thereof.

THE TERMS AND CONDITIONS LISTED IN THE CONTRACT ARE IMPORTANT PARTS OF THIS AGREEMENT, AND OWNER(S) (SIGNEES) FULLY UNDERSTAND AND AGREE THAT THEY HAVE READ SUCH TERMS AND CONDITIONS AND ARE BOUND BY THE SAME

*I authorize work based on what Travelers has agreed to pay for, less my deductible.*

Sign here _____  Date   8-10-23

Filed        24-CI-00231 04/23/2024        Stephen Kaelin, Oldham Circuit Clerk

# Terms & Conditions All American
# Chimney Service LLC

The Contractor, All American Chimney Service, LLC, is certified, insured and licensed for all of the above described work and applications. This estimate reflects current costs and availability of materials and is subject to change beyond 30 days. A 50% retainer is required for all work upon contract signing and no later than upon delivery of materials to the work site. The total balance is due at time of completion.

Acceptance of Proposal: You are hereby authorized to return a formal contract between us to accomplish the work described in the above proposal, for which the undersigned agrees to pay the amount stated in said proposal and according to the terms thereof. THE TERMS AND CONDITIONS LISTED IN THE CONTRACT ARE IMPORTANT PARTS OF THIS AGREEMENT, AND OWNER(S) (SIGNEES) FULLY UNDERSTAND AND AGREE THAT THEY HAVE READ SUCH TERMS AND CONDITIONS AND ARE BOUND BY THE SAME

ADDITIONAL TERMS AND CONDITIONS 1. ONLY CONTRACT. Owner(s) hereby warrants to Contractor that he or she is the owner of the property on which the improvements are to be made and is not presently bound by a contract with any other person or company for the performance of all or any part of the work, materials, and/or labor specified on the front of this Agreement. Contractor will not perform any labor or furnish any materials other than as shown on the front of this Agreement. Any additions, alterations, or deviations from the labor and materials shown on the estimate will be performed only upon a written modification signed by the Owner and Contractor, which will include an extra charge for any such addition to the cash price and balance due by Owner to Contractor. All the terms and conditions of this Agreement shall apply to any such addition of labor or materials. 2. DISCLAIMER OF WARRANTY ON MATERIALS. Owner fully understands and agrees that the contractor is not the manufacturer of the materials used to complete the repairs and improvements described in this agreement. The Contractor has not made any express or implied warranty with regards to the material purchased, and that the Contractor does not warrant that the materials will meet the requirements of any laws, rules, codes, or specifications. AS TO ALL MATERIALS, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY EXCLUDED AND DISCLAIMED BY THE CONTRACTOR. A written warranty by the manufacturer, IF ANY, is the ONLY WARRANTY in connection with the materials used in the improvements described in this Agreement. Contractor does not adopt any manufacturer's warranty. Customer understands that our labor charges are separate and distinct from a manufactures warranty and are the responsibility of the Owner. 3. FIVE YEAR LIMITED WARRANTY ON LABOR. The labor furnished by the Contractor in installing the materials or building the improvements described on the front of this Agreement shall be performed in a workmanlike manner and is warranted for a PERIOD OF FIVE YEARS from the date of this Agreement. The warranty covers only deficiencies in workmanship and does not cover defects in the materials or damages caused by anything other than a deficiency in Contractor's labor, including, but not limited to, damages caused in whole or in part by any defect in the Owner(s) structure. This warranty on labor extends only to the Owner named in this Agreement and does not extend to any purchaser of the property. Owner cannot assign or sell this warranty on labor to anyone else. 4. CONSEQUENTIAL DAMAGES. Contractor expressly disclaims any and all consequential damages incurred by Owner(s) that may result from Contractor's performance of this Agreement, including, but not limited to, any lost wages, lost profits, loss of business to Owner(s), or any damage to other parts of Owner(s) property. Owner(s) agree that Contractor shall not be liable or responsible to Owner for any such damages. 5. SUBCONTRACTORS / INSURANCE / SURPLUS MATERIALS. At its sole discretion. Contractor may subcontract any part of the labor and/or improvements described on the front of this Agreement. Owner agrees to carry homeowner's insurance sufficient to cover the Owner's property and the improvements listed in this agreement from any and all losses. All surplus materials taken to the job site for completing the improvements under this Agreement shall remain the sole property of the Contractor, and Contractor shall have the right to remove same within a reasonable time upon completion of the work. 6. COMMENCEMENT DATE / COMPLETION DATE / COMPLETION CERTIFICATE. After the Owner's right to cancel this Agreement has expired, if any, Contractor agrees to use reasonable efforts to begin work as soon as practical and to complete the improvements described in this Agreement within a reasonable time thereafter. Contractor does not promise or agree to a date certain for completion of the improvements described in this Agreement. If any date of completion was discussed verbally, such date was an ESTIMATE ONLY. 7. PAYMENT OF BALANCE OF CASH PRICE/INTEREST/ATTORNEY'S FEES. Owner agrees that upon substantial completion of the improvements described in this Agreement, Owner understands Payment is due immediately but no later than 7 day after substantial completion of improvements described in this agreement and agrees to pay Contractor the balance of cash price as shown on the signed estimate or ( an estimate recognized by e-mail correspondence). If balance of the cash price is not paid in full by the Owner when it is due , Owner will pay any unpaid portion of the balance of cash price with interest at the rate of 1.5% per month compounded from the due date until paid or the maximum interest available under law, whichever is greater. In addition, Owner agrees to pay Contractor's reasonable attorney fees and court costs incurred in collection of any amounts due

Filed
Filed
Filed

24-CI-00231 04/23/2024
24-CI-00231 04/23/2024

Stephen Kaelin, Oldham Circuit Clerk

Stephen Kaelin, Oldham Circuit Clerk

under this Agreement. We reserve the right to place a lien on the property and report to the credit bureaus if payment not paid in full within 7 days of job completion.

8. WORK STOPPAGE AND LIQUIDATED DAMAGES. If, after the expiration of Owner's right to cancel, if any, the Owner attempts to cancel this Agreement and/or prohibits Contractor from installing the improvements described herein, Owner(s) agree to pay Contractor a minimum of 25% of the cash price as liquidated damages and not as a penalty. Contractor will retain the down payment in addition to such liquidated damages. Contractor shall also be entitled to collect any and all additional damages allowed by law and/or equity. 9. MEDIATION / ARBITRATION. Any claim, dispute, or other matter in controversy sought by Owner(s) related to this Agreement shall be resolved exclusively by mediation and, if mediation is unsuccessful, then arbitration. Owner(s) agree and understand that he/she waives his/her right to file a lawsuit in Court. Owner(s) must first attempt to mediate any dispute with a neutral mediator in Louisville, Kentucky. The parties shall agree on a mediator and shall split the costs of mediation equally. If mediation does not resolve the dispute, Owner(s) agree that the matter may only be resolved in arbitration in Louisville, and the arbitration will be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules in effect on the date the Dispute is submitted to arbitration. The arbitrator shall base the arbitration award on this Agreement, accepted industry customs and practices, applicable law, and/or judicial precedent. However, Contractor may, in its sole discretion, choose to sue Owner(s) to collect any balance owed in lieu of mediation and/or arbitration.

10. MISCELLANEOUS. Owner agrees that he/she fully understands this Agreement, and that this written Agreement constitutes the entire contract between the parties with respect to the subject matter hereof. It is agreed that all of the terms and conditions of this Agreement are set forth herein. No waiver, modification, or variation thereof shall be binding upon the Contractor unless in writing and signed or mutually agreed upon by Email correspondence or agreed upon by its duly authorized representative. Owner or Contract signee accepts 100% responsibility for any communications made through the electronic mail address noted in this contract. In entering into this Agreement, Owner is not relying on any statements, promises, commitments, or representations by Contractor or Contractor's agents, servants or employees, which are not set forth in writing herein. In the event any part of this Agreement shall be found to be unenforceable, the remainder of this Agreement shall be binding upon the parties. The terms and conditions of this Agreement shall not be construed for or against either party on account of who drafted the Agreement and shall be construed in accordance with applicable federal law and/or the laws of the Commonwealth of Kentucky. We Hereby Propose to furnish labor and materials complete in accordance with the above specifications for the amount stated above. This estimate reflects current costs and availability of materials and is subject to change beyond 30 days. This proposal is confidential and may not be shared with other contractors. All work must be completed at the same time or an additional charge for scaffolding and trip charges will apply. We agree that any changes in the scope of work will be a separate contract.

11. LIMITATIONS OF LIABILITY: Copies of our certificates of insurance and a list of references are available upon request. Price includes all materials, labor, scaffolding, clean up and haul off of debris, dump site fee, and insurance. In an instance where a chimney is improperly constructed and the repairs that we perform do not address a code or safety violation, we are not responsible for latent or prior construction defects. Cancellations of a prescheduled production day less than 48 hours prior to a scheduled time may incur a fee for rescheduling. If your roof needs repair or replacement, please have this completed before we arrive, as we may damage it further and it could be a danger to our workers. Minor wear on the roof or gutters may occur because of walking, setting of scaffolding or use of ladders contractor shall not be held liable for minor dings or scuff marks. If the customer contracts for any repairs without the express written approval of AACS customer assumes financial responsibility for that repair and will not be deducted from the amount owed to AACS. Customer understands that brick and masonry are porous and will absorb the essence of creosote and wood smoke and even after being professional removed odors may linger until they naturally dissipate and contractor shall not be held liable. Any repairs to the exterior of the chimney(s) exterior including but not limited to brick work, rebuilding, coating or sealing address the veneer only and does not imply, include or warranty the chimney flues, the safety or functionality of the chimney system. If another contractor or person performs unscheduled repairs to an area we are contracted to work on additional charges may apply to correct any work that hinders our ability to execute the scope of this contract. In the event of a water leak, it is to be known that the chimney may not be the only source of the water that is causing the leak. Roofing materials, skylights, siding, gutters and downspouts are all potential problem areas when addressing leaks. Contractor is not responsible for any water leaks that originate outside our purview of contracted work. Travel fees and hourly rates may apply if we are called to reinspect our work and no fault is found with the work we performed. Brickwork (if applicable) is contingent upon the ability to obtain bricks that match the existing bricks. If we cannot find the exact matching bricks, we will use the closest matching bricks we can find in the Louisville area. All windows and doors must be tightly closed when masonry repairs are being performed to help prevent dust from entering your home.

Customer understands that on rare occasions after performing any type of repair work on a chimney efflorescence (white stains) may occur after the work is completed this phenomenon is neither predictable or preventable and contractor shall not be held liable. Paint of any type that is applied on or near any masonry work we have performed voids any warranty to contractors work. If



customer desires to change the brick after work has initiated, additional fees will apply. Customer understands that spalling or flaking brick on a chimney is an indication that other brick have already suffered internal damage not yet visible and only the specific area where we performed repairs is warrantied. Customer understands that waterproofing will not stop already damaged brick from deteriorating and is only used a preventative measure to slow down or prevent future deterioration. Customer understands that tree limbs near the chimney structure may need to be removed to perform our work. Contractor shall not be held liable for minor damage that may occur to yard, shrubs or flowers near the chimney structure during the execution of our duties. Our Crown/Washes are poured with cement, and on rare occasions minor surface cracks may appear due to changes in atmospheric conditions beyond our control customer agrees to allow contractor to repair these small areas with a 10 year elastomeric sealant which will not effect any warranties provided by contractor. Customer understands anytime a fireplace insert is either installed or removed minimal contact with the hearth or floor area directly in-front of the fireplace may be unavoidable and small scuffs could occur and contractor shall not be held liable. Customer understands that if given an estimate for a water entry issue that all items on the estimate must be repaired to receive a comprehensive warranty. If only a portion of the list of repairs are contracted for only those specific areas are warrantied. If a portion of the chimney was missed during a leak inspection and contractor agrees the customer may require contractor to repair that area at a 50% discount to receive the leak guarantee the company advertises. Customer understands that neither our inspections or our repairs include the footer or home foundation and contractor is not liable for any defects found in these areas or any moisture rising up from the ground from capillary suction. Contractor is not responsibility for any deficiencies in ground slope near the chimney which prevents adequate drainage away from the chimney. Our flue repairs consist of either repairing the existing chimney flue system with Heat-shield or installing an appropriate sized liner calculated according to the specifications in NFPA 211 or NFPA 54. Because home pressures effect chimney draft and flow and are caused by a myriad of factors outside of our control there is no warranty to the to the drafting function of any chimney we have performed work on and none should be implied. Diagnose of any pressure issues can be done at additional cost to the customer or customer may be referred to a company that specializes in correcting home pressure issues. All chimney repairs or appliance installation require a yearly inspection conducted by a CSIA certified chimney sweep to remain valid. Customer understands that any appliance that is installed comes with a manufactures warranty which does not include labor or travel fees associated with repair or inspection of that appliance. Customer understands that it is their responsibility to fill out or send in any warranty cards associated with an appliance installation or chimney (fireplace) repair. Customer agrees to pay as outlined above. If escrow is involved, the homeowner or signee will be responsible to see that we receive payment as outlined above. All material is guaranteed to be as specified. All work is guaranteed to be free from defects and will be completed in a professional manner according to standard practices, and local codes. All agreements contingent upon weather, accidents, or delays beyond our control. We schedule work in the order it is received. Please be aware that we always try to keep our schedule, but weather or problems encountered with a prior job may occasionally delay the start or completion of your job and will be rescheduled as soon as practicable. Owner to carry fire, and homeowners insurance. Our workers are covered by workman's compensation and liability insurance. Price on labor good for 60 days. Payment is due the same day as job completion and may be made with personal check, money order, signed insurance draft, MasterCard, or Visa. If custom parts are ordered for a job we require access to your home to install them if after three attempts to set a date and or work dates are canceled balance is due in full immediately and the date for install will be coordinated at a mutually agreeable time in the future. AACS is not responsible for damages to property or articles within properties that are caused by lack of annual maintenance inspection, interior water entry, and random acts of nature including, but not limited to, winds 40 MPH and greater, floods, hurricanes, tornado's, earthquakes, and freeze thaw conditions. All warranties will become void if the work has not been paid in full as to the terms of the contract. This contract must be presented for return of merchandise or claim of warranty. AACS makes no other warranties, express or implied and its agents, mechanics or servicemen are not authorized to make any such warranties on behalf of AACS. All retainers or deposits are non-refundable.

Filed                    24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# B

Filed                    24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

All American Chimney Service, LLC
11600 Electron Drive
Louisville, KY 40299

**BILL TO**
Chris Quinn
5315 Arrowshire Drive
La Grange, KY 40031 USA

| ESTIMATE | ESTIMATE DATE |
|----------|---------------|
| 58383914 | Sep 18, 2023 |

**JOB ADDRESS**                              Project: 58024129
Chris Quinn
5315 Arrowshire Drive
La Grange, KY 40031 USA

| TASK | DESCRIPTION | QTY | PRICE | TOTAL |
|------|-------------|-----|-------|-------|
| Ahren A-32 Tall | Ahren-Fire is a complete fireplace restoration system. | 1.00 | $5,893.12 | $5,893.12 |
| | • By installing the Ahren-Fire firebox system you can bring your existing masonry fireplace up to current safety codes. The system is super insulated so combustible materials will not be a factor. | | | |
| | • Ahren-Fire is currently one of two fireplace restoration products that meets or exceeds the UL Listed safety testing criteria. | | | |
| | • The back and side panels are designed to improve operation and admit more heat back into the home. | | | |
| | • Price does not include labor for installation . 6 hours minimum | | | |
| Install Labor | Labor to Demo old firebox and install a new ahren firebox. | 1.00 | $1,872.00 | $1,872.00 |

| | |
|---|---|
| POTENTIAL SAVINGS | $0.00 |
| SUB-TOTAL | $7,765.12 |
| TAX | $0.00 |
| TOTAL | $7,765.12 |
| EST. FINANCING | $128.90 |

WE HAVE A LOW PRICE GUARANTEE FOR SERVICES OFFERED*

Thank you for your business!
CUSTOMER AUTHORIZATION

You are hereby authorized to return a formal contract between us to accomplish the work described in the above proposal,
for which the undersigned agrees to pay the $7,765.12 which is stated in said proposal and according to the Terms and

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Conditions thereof.

THE TERMS AND CONDITIONS LISTED IN THE CONTRACT ARE IMPORTANT PARTS OF THIS AGREEMENT, AND OWNER(S) (SIGNEES) FULLY UNDERSTAND AND AGREE THAT THEY HAVE READ SUCH TERMS AND CONDITIONS AND ARE BOUND BY THE SAME

Sign here                                          Date

Filed                    24-CI-00231 04/23/2024

Stephen Kaelin, Oldham Circuit Clerk

# Terms & Conditions All American Chimney Service LLC

The Contractor, All American Chimney Service, LLC, is certified, insured and licensed for all of the above described work and applications. This estimate reflects current costs and availability of materials and is subject to change beyond 30 days. A 50% retainer is required for all work upon contract signing and no later than upon delivery of materials to the work site. The total balance is due at time of completion.

Acceptance of Proposal: You are hereby authorized to return a formal contract between us to accomplish the work described in the above proposal, for which the undersigned agrees to pay the amount stated in said proposal and according to the terms thereof. THE TERMS AND CONDITIONS LISTED IN THE CONTRACT ARE IMPORTANT PARTS OF THIS AGREEMENT, AND OWNER(S) (SIGNEES) FULLY UNDERSTAND AND AGREE THAT THEY HAVE READ SUCH TERMS AND CONDITIONS AND ARE BOUND BY THE SAME

ADDITIONAL TERMS AND CONDITIONS 1. ONLY CONTRACT. Owner(s) hereby warrants to Contractor that he or she is the owner of the property on which the improvements are to be made and is not presently bound by a contract with any other person or company for the performance of all or any part of the work, materials, and/or labor specified on the front of this Agreement. Contractor will not perform any labor or furnish any materials other than as shown on the front of this Agreement. Any additions, alterations, or deviations from the labor and materials shown on the estimate will be performed only upon a written modification signed by the Owner and Contractor, which will include an extra charge for any such addition to the cash price and balance due by Owner to Contractor. All the terms and conditions of this Agreement shall apply to any such addition of labor or materials. 2. DISCLAIMER OF WARRANTY ON MATERIALS. Owner fully understands and agrees that the contractor is not the manufacturer of the materials used to complete the repairs and improvements described in this agreement. The Contractor has not made any express or implied warranty with regards to the material purchased, and that the Contractor does not warrant that the materials will meet the requirements of any laws, rules, codes, or specifications. AS TO ALL MATERIALS, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY EXCLUDED AND DISCLAIMED BY THE CONTRACTOR. A written warranty by the manufacturer, IF ANY, is the ONLY WARRANTY in connection with the materials used in the improvements described in this Agreement. Contractor does not adopt any manufacturer's warranty. Customer understands that our labor charges are separate and distinct from a manufactures warranty and are the responsibility of the Owner. 3. FIVE YEAR LIMITED WARRANTY ON LABOR. The labor furnished by the Contractor in installing the materials or building the improvements described on the front of this Agreement shall be performed in a workmanlike manner and is warranted for a PERIOD OF FIVE YEARS from the date of this Agreement. The warranty covers only deficiencies in workmanship and does not cover defects in the materials or damages caused by anything other than a deficiency in Contractor's labor, including, but not limited to, damages caused in whole or in part by any defect in the Owner(s) structure. This warranty on labor extends only to the Owner named in this Agreement and does not extend to any purchaser of the property. Owner cannot assign or sell this warranty on labor to anyone else. 4. CONSEQUENTIAL DAMAGES. Contractor expressly disclaims any and all consequential damages incurred by Owner(s) that may result from Contractor's performance of this Agreement, including, but not limited to, any lost wages, lost profits, loss of business to Owner(s), or any damage to other parts of Owner(s) property. Owner(s) agree that Contractor shall not be liable or responsible to Owner for any such damages. 5. SUBCONTRACTORS / INSURANCE / SURPLUS MATERIALS. At its sole discretion, Contractor may subcontract any part of the labor and/or improvements described on the front of this Agreement. Owner agrees to carry homeowner's insurance sufficient to cover the Owner's property and the improvements listed in this agreement from any and all losses. All surplus materials taken to the job site for completing the improvements under this Agreement shall remain the sole property of the Contractor, and Contractor shall have the right to remove same within a reasonable time upon completion of the work. 6. COMMENCEMENT DATE / COMPLETION DATE / COMPLETION CERTIFICATE. After the Owner's right to cancel this Agreement has expired, if any, Contractor agrees to use reasonable efforts to begin work as soon as practical and to complete the improvements described in this Agreement within a reasonable time thereafter. Contractor does not promise or agree to a date certain for completion of the improvements described in this Agreement. If any date of completion was discussed verbally, such date was an ESTIMATE ONLY. 7. PAYMENT OF BALANCE OF CASH PRICE/INTEREST/ATTORNEY'S FEES. Owner agrees that upon substantial completion of the improvements described in this Agreement, Owner understands Payment is due immediately but no later than 7 day after substantial completion of improvements described in this agreement and agrees to pay Contractor the balance of cash price as shown on the signed estimate or ( an estimate recognized by e-mail correspondence). If balance of the cash price is not paid in full by the Owner when it is due , Owner will pay any unpaid portion of the balance of cash price with interest at the rate of 1.5% per month compounded from the due date until paid or the maximum interest available under law, whichever is greater. In addition, Owner agrees to pay Contractor's reasonable attorney fees and court costs incurred in collection of any amounts due



under this Agreement. We reserve the right to place a lien on the property and report to the credit bureaus if payment not paid in full within 7 days of job completion.

8. WORK STOPPAGE AND LIQUIDATED DAMAGES. If, after the expiration of Owner's right to cancel, if any, the Owner attempts to cancel this Agreement and/or prohibits Contractor from installing the improvements described herein, Owner(s) agree to pay Contractor a minimum of 25% of the cash price as liquidated damages and not as a penalty. Contractor will retain the down payment in addition to such liquidated damages. Contractor shall also be entitled to collect any and all additional damages allowed by law and/or equity. 9. MEDIATION / ARBITRATION. Any claim, dispute, or other matter in controversy sought by Owner(s) related to this Agreement shall be resolved exclusively by mediation and, if mediation is unsuccessful, then arbitration. Owner(s) agree and understand that he/she waives his/her right to file a lawsuit in Court. Owner(s) must first attempt to mediate any dispute with a neutral mediator in Louisville, Kentucky. The parties shall agree on a mediator and shall split the costs of mediation equally. If mediation does not resolve the dispute, Owner(s) agree that the matter may only be resolved in arbitration in Louisville, and the arbitration will be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules in effect on the date the Dispute is submitted to arbitration. The arbitrator shall base the arbitration award on this Agreement, accepted industry customs and practices, applicable law, and/or judicial precedent. However, Contractor may, in its sole discretion, choose to sue Owner(s) to collect any balance owed in lieu of mediation and/or arbitration.

10. MISCELLANEOUS. Owner agrees that he/she fully understands this Agreement, and that this written Agreement constitutes the entire contract between the parties with respect to the subject matter hereof. It is agreed that all of the terms and conditions of this Agreement are set forth herein. No waiver, modification, or variation thereof shall be binding upon the Contractor unless in writing and signed or mutually agreed upon by Email correspondence or agreed upon by its duly authorized representative. Owner or Contract signee accepts 100% responsibility for any communications made through the electronic mail address noted in this contract. In entering into this Agreement, Owner is not relying on any statements, promises, commitments, or representations by Contractor or Contractor's agents, servants or employees, which are not set forth in writing herein. In the event any part of this Agreement shall be found to be unenforceable, the remainder of this Agreement shall be binding upon the parties. The terms and conditions of this Agreement shall not be construed for or against either party on account of who drafted the Agreement and shall be construed in accordance with applicable federal law and/or the laws of the Commonwealth of Kentucky. We Hereby Propose to furnish labor and materials complete in accordance with the above specifications for the amount stated above. This estimate reflects current costs and availability of materials and is subject to change beyond 30 days. This proposal is confidential and may not be shared with other contractors. All work must be completed at the same time or an additional charge for scaffolding and trip charges will apply. We agree that any changes in the scope of work will be a separate contract.

11. LIMITATIONS OF LIABILITY: Copies of our certificates of insurance and a list of references are available upon request. Price includes all materials, labor, scaffolding, clean up and haul off of debris, dump site fee, and insurance. In an instance where a chimney is improperly constructed and the repairs that we perform do not address a code or safety violation, we are not responsible for latent or prior construction defects. Cancellations of a prescheduled production day less than 48 hours prior to a scheduled time may incur a fee for rescheduling. If your roof needs repair or replacement, please have this completed before we arrive, as we may damage it further and it could be a danger to our workers. Minor wear on the roof or gutters may occur because of walking, setting of scaffolding or use of ladders contractor shall not be held liable for minor dings or scuff marks. If the customer contracts for any repairs without the express written approval of AACS customer assumes financial responsibility for that repair and will not be deducted from the amount owed to AACS. Customer understands that brick and masonry are porous and will absorb the essence of creosote and wood smoke and even after being professional removed odors may linger until they naturally dissipate and contractor shall not be held liable. Any repairs to the exterior of the chimney(s) exterior including but not limited to brick work, rebuilding, coating or sealing address the veneer only and does not imply, include or warranty the chimney flues, the safety or functionality of the chimney system. If another contractor or person performs unscheduled repairs to an area we are contracted to work on additional charges may apply to correct any work that hinders our ability to execute the scope of this contract. In the event of a water leak, it is to be known that the chimney may not be the only source of the water that is causing the leak. Roofing materials, skylights, siding, gutters and downspouts are all potential problem areas when addressing leaks. Contractor is not responsible for any water leaks that originate outside our purview of contracted work. Travel fees and hourly rates may apply if we are called to reinspect our work and no fault is found with the work we performed. Brickwork (if applicable) is contingent upon the ability to obtain bricks that match the existing bricks. If we cannot find the exact matching bricks, we will use the closest matching bricks we can find in the Louisville area. All windows and doors must be tightly closed when masonry repairs are being performed to help prevent dust from entering your home.

Customer understands that on rare occasions after performing any type of repair work on a chimney efflorescence (white stains) may occur after the work is completed this phenomenon is neither predictable or preventable and contractor shall not be held liable. Paint of any type that is applied on or near any masonry work we have performed voids any warranty to contractors work. If

Filed          24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk
Filed          24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

customer desires to change the brick after work has initiated, additional fees will apply. Customer understands that spalling or flaking brick on a chimney is an indication that other brick have already suffered internal damage not yet visible and only the specific area where we performed repairs is warrantied. Customer understands that waterproofing will not stop already damaged brick from deteriorating and is only used a preventative measure to slow down or prevent future deterioration. Customer understands that tree limbs near the chimney structure may need to be removed to perform our work. Contractor shall not be held liable for minor damage that may occur to yard, shrubs or flowers near the chimney structure during the execution of our duties. Our Crown/Washes are poured with cement, and on rare occasions minor surface cracks may appear due to changes in atmospheric conditions beyond our control customer agrees to allow contractor to repair these small areas with a 10 year elastomeric sealant which will not effect any warranties provided by contractor. Customer understands anytime a fireplace insert is either installed or removed minimal contact with the hearth or floor area directly in-front of the fireplace may be unavoidable and small scuffs could occur and contractor should not be held liable. Customer understands that if given an estimate for a water entry issue that all items on the estimate must be repaired to receive a comprehensive warranty. If only a portion of the list of repairs are contracted for only those specific areas are warrantied. If a portion of the chimney was missed during a leak inspection and contractor agrees the customer may require contractor to repair that area at a 50% discount to receive the leak guarantee the company advertises. Customer understands that neither our inspections or our repairs include the footer or home foundation and contractor is not liable for any defects found in these areas or any moisture rising up from the ground from capillary suction. Contractor is not responsibility for any deficiencies in ground slope near the chimney which prevents adequate drainage away from the chimney. Our flue repairs consist of either repairing the existing chimney flue system with Heat-shield or installing an appropriate sized liner calculated according to the specifications in NFPA 211 or NFPA 54. Because home pressures effect chimney draft and flow and are caused by a myriad of factors outside of our control there is no warranty to the to the drafting function of any chimney we have performed work on and none should be implied. Diagnose of any pressure issues can be done at additional cost to the customer or customer may be referred to a company that specializes in correcting home pressure issues. All chimney repairs or appliance installation require a yearly inspection conducted by a CSIA certified chimney sweep to remain valid. Customer understands that any appliance that is installed comes with a manufactures warranty which does not include labor or travel fees associated with repair or inspection of that appliance. Customer understands that it is their responsibility to fill out or send in any warranty cards associated with an appliance installation or chimney (fireplace) repair. Customer agrees to pay as outlined above. If escrow is involved, the homeowner or signee will be responsible to see that we receive payment as outlined above. All material is guaranteed to be as specified. All work is guaranteed to be free from defects and will be completed in a professional manner according to standard practices, and local codes. All agreements contingent upon weather, accidents, or delays beyond our control. We schedule work in the order it is received. Please be aware that we always try to keep our schedule, but weather or problems encountered with a prior job may occasionally delay the start or completion of your job and will be rescheduled as soon as practicable. Owner to carry fire, and homeowners insurance. Our workers are covered by workman's compensation and liability insurance. Price on labor good for 60 days. Payment is due the same day as job completion and may be made with personal check, money order, signed insurance draft, MasterCard, or Visa. If custom parts are ordered for a job we require access to your home to install them if after three attempts to set a date and or work dates are canceled balance is due in full immediately and the date for install will be coordinated at a mutually agreeable time in the future. AACS is not responsible for damages to property or articles within properties that are caused by lack of annual maintenance inspection, interior water entry, and random acts of nature including, but not limited to, winds 40 MPH and greater, floods, hurricanes, tornado's, earthquakes, and freeze thaw conditions. All warranties will become void if the work has not been paid in full as to the terms of the contract. This contract must be presented for return of merchandise or claim of warranty. AACS makes no other warranties, express or implied and its agents, mechanics or servicemen are not authorized to make any such warranties on behalf of AACS. All retainers or deposits are non-refundable.

Filed          24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# C

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Monday, February 19, 2024

# Chimney Inspection

**CHIMNEY EXPERTS**
QUALITY MATTERS

| | |
|---|---|
| **Date** | Monday, February 19, 2024 |
| **Client** | Chris Quinn |
| **Email** | kycqster@live.com |
| **Address** | 5315 Arrowshire Dr. Lagrange, KY 40031 |
| **Picture of house** | |



**Terms and Conditions**          Accepted

For your convenience, this inspection report includes references to the "Kentucky Chimneys, Fireplaces, Vents and Solid Fuel-burning Appliances Code - 2013 Edition." These guidelines are standard for chimneys and related structures in our state. We've highlighted some of the most common codes pertinent to our findings for easy reference, ensuring clarity and precision in our assessment of your property.

1

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Note on Non-defective Findings

It's essential to understand that any component of your property labeled as "not defective" within this report simply indicates its condition at the time of our inspection. This designation does not serve as a warranty or guarantee of future performance. We always recommend regular maintenance and checks to ensure the continued safety and efficiency of your home's systems.

14.2 Annual Inspection:
Chimneys, fireplaces, and vents shall be inspected at least once a year in accordance with the requirements of Section 15.2.

14.7.1:
Chimneys, vents, and fireplaces shall be inspected, cleaned, and repaired if there is any evidence of damage to the chimney, fireplace, or vent or to the surroundings.

14.9* Damaged or Deteriorated Liners:
If the flue liner in a chimney has softened, cracked, or otherwise deteriorated so that it no longer has the continued ability to contain the products of combustion (i.e., heat, moisture, creosote, and flue gases), the liner shall be either removed and replaced, repaired, or relined with a listed liner system or other approved material that will resist corrosion, softening, or cracking from flue gases at temperatures appropriate to the class of chimney service.

11.2.1.13:
The inner surfaces of the smoke chamber shall be parge coated smooth, with an insulating refractory mortar, and not inclined more than 45 degrees from vertical.

**Type of fireplace system**          Masonry

**Flue**          Missing Flue Liner: The flue liner is missing, essential for preventing heat transfer and ensuring an efficient draft.

**Flue picture**



**Flue picture**

2

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed                24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

## Technicians Flue Comments

The first floor fireplace flue has been extracted down to the base flue tiles.

The second floor fireplace flue has damage to the flue tile that is not consistent with normal wear and tear. From a visual inspection the tile looks to of been damaged during a flue tile extraction.

### Crown

Concrete Material Issue: The crown is not made of suitable concrete; regular mortar seems to be used instead.

Insufficient Thickness: Crown thickness is below the recommended minimum of 2 inches.

Structural Damage: Visible cracks or damage have been noticed, suggesting potential structural problems.

Inadequate Design & Overhang: Crown doesn't extend at least 2 inches beyond the chimney edge or lacks the drip edge. The crown might not slope away from the flue, leading to water pooling.

### Crown pictures

Filed                24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk



Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



**Technicians Crown Comments**

The chimney appears to of been in the process of being rebuilt. The crown is not present.

| Chimney cap | Missing Cap: The chimney is without a cap, leaving it exposed to weather elements, animal intrusion, and debris. |
| --- | --- |
| Flashing | Missing Flashing: There's no flashing installed where the chimney meets the roof, leading to potential water penetration. |

flashing pictures

4

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Flashing pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed                    24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk



Flashing pictures

Filed                    24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



### Technicians flashing comments

Upon arriving I documented my process of getting on the roof. From the ground, to getting on the roof it appears the flashing was not covered properly to stop ongoing moisture entry. The flashing appears to of been removed from the chimney during a chimney rebuild.

### Chimney Exterior

Mortar Joints Gap: Some mortar joints have gaps or voids, risking structural and water infiltration issues.

### Exterior pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Exterior pictures

8

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Exterior pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Exterior pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Exterior pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Exterior pictures

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



### Technician exterior pictures

Assessment of Chimney Rebuild

Upon my inspection, it is evident that the chimney has been rebuilt in a manner that fails to meet several key construction and masonry standards. The following points detail the deficiencies observed:

1. Inconsistent Mortar Joint Thickness

The mortar joints present are inconsistent, with some measuring up to 2 inches in thickness. This is contrary to the guidelines set forth by ASTM C270-20 "Standard Specification for Mortar for Unit Masonry," which recommends a uniform joint thickness of 1/4 inch to 3/8 inch. Such inconsistency can lead to non-uniform load distribution and can affect the structural integrity of the chimney.

2. Improperly Sized and Cut Bricks

I observed that bricks have been inappropriately cut into smaller sizes, resulting in an irregular pattern that diverges from ASTM C216-20 "Standard Specification for Facing Brick." This practice has not only led to an aesthetically displeasing outcome but also compromised the structural stability due to the presence of large mortar joints within the same course.

3. Non-Square Corners and Course Alignment

The corners of the chimney are not square, and certain courses project out from the main structure by approximately 1 inch. This issue raises concerns about the overall structural integrity and is not in compliance with the "Building Code Requirements for Masonry Structures (TMS 402)." Such deviation from the vertical alignment can lead to uneven distribution of loads and potential structural failure.

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Conclusion and Recommendations

The rebuild of the chimney has been conducted negligently, with multiple departures from accepted masonry practices. The workmanship displayed does not align with the standards expected in the industry and poses significant concerns regarding both safety and structural soundness.

It is imperative that a licensed masonry contractor with experience in chimney construction be employed to rectify these issues. The contractor should systematically dismantle the existing structure and rebuild it following the specifications of ASTM standards, the International Building Code, and other relevant codes. A post-construction inspection by a qualified engineer is also advised to confirm the integrity and compliance of the rebuild.

The gravity of these findings cannot be overstated, as they directly impact the safety and durability of the structure. Immediate action should be taken to address these concerns in a comprehensive manner.

**Operational status**

Non-Compliant: Does not meet current codes and standards, major modifications or replacement needed

**Inspector's Name**

David York

**Inspector's Signature**

# EXHIBIT

# D

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

---

**From:** david york <info@certifiedchimneyexperts.com>
**Sent:** Thursday, February 22, 2024 7:07:29 PM
**To:** Chris Quinn <kycqster@live.com>
**Subject:** Re: https://squareup.com/pay-invoice/estimate/inve:0-ChCtggDA1KPtPP4Ac2e6xQ7EEJEN

Chris Quinn,

We have prepared a comprehensive estimate for the chimney deconstruction and rebuilding services required at 5345 Park Rd. This estimate is structured to outline the costs of materials and labor separately, with a detailed breakdown of the step-by-step process we will follow to ensure the job is completed to the highest professional standard.

Materials:

- Sand for mortar preparation: $150
  - EAU CLAIRE Modular Bricks (Two cubes): $700
  - Medium range of reds, whites, and blacks
  - Sanded texture
  - Antique style to match older traditional full range reds

Total Materials Cost: $850

Labor:

- Skilled masonry labor for chimney deconstruction and reconstruction: $5,350
- Includes setup and dismantling of scaffolding
- Removal of all non-compliant bricks and mortar, and disposal of debris
- Precise laying of bricks with appropriate mortar joint thickness
- Ensuring corners are square and courses are level

Total Labor Cost: $6,350

Process Breakdown:

4

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

- Site Preparation:
  - Erect scaffolding for safe access
  - Lay down protective materials to safeguard property during deconstruction
- Chimney Deconstruction:
  - Carefully dismantle existing chimney structure to the last rebuild point
  - Remove and dispose of debris in accordance with environmental regulations
- Material Preparation:
  - Prepare mortar mix to match the specified consistency and color
  - Organize bricks and materials for efficient access during rebuild
- Chimney Rebuild:
  - Lay new brickwork using EAU CLAIRE bricks, following traditional methods to ensure a seamless match with the existing structure
  - Maintain consistent mortar joint thickness and brick pattern
  - Continually check for squareness and levelness of the structure
- Cleanup and Finishing:
  - Remove scaffolding and all construction materials from the site
  - Conduct a final inspection to ensure the integrity and aesthetics of the rebuild
- Post-Construction:
  - Provide client with maintenance recommendations and warranty information for the new chimney structure

Total Estimate Cost: $7,200

Please note that this estimate is subject to change based on site-specific conditions or adjustments in the scope of work. We aim to provide transparent and accurate pricing, ensuring you are informed throughout the process. For any clarifications or to proceed with the work, please contact us.



**CHIMNEY EXPERTS**
QUALITY MATTERS

Chief Venting Specialist     Chimney Experts

David York

Filed          24-CI-00231 04/23/2024          5          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk
Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# E

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Douglas Hetsch (Owner)
American Chimney & Fireplace
Louisville, Ky 40299
www.aachimneyservice.com
e: Doug@aachimneyservice.com
(502) 435-2364
Master Chimney Sweep #46
NCSG member, CCS # 7338
C-DET # 654, NFI # 169550



On Tue, Feb 6, 2024 at 10:09 AM Chris Quinn <kycqster@live.com> wrote:

Doug -

Before we move on to discuss options 1-3, or options I could propose, #'s 4 and 5 please answer this question:

Were your employees correct when they told me I had no option but to accept an engineered firebox, unless I wanted to install a wood burning stove or convert to gas?

Thanks –

Christopher Quinn

**From:** Doug <doug@aachimneyservice.com>
**Sent:** Thursday, February 1, 2024 6:14 PM
**To:** Chris Quinn <kycqster@live.com>; Frances Hetsch <frances@aachimneyservice.com>
**Cc:** Levi Bogue <levi@aachimneyservice.com>
**Subject:** Re: questions

Chris,

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk





Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

You've shown us photos of a job in progress and, like I've previously mentioned, we are willing to take corrective action on the few areas we both agree need to be addressed, which our contract address and holds us to. These are our options:

## Option 1

We sit down and get a game plan to complete your project as originally planned by your insurance company, correcting the few areas we agree need to be fixed. An error doesn't become a mistake until you refuse to correct it.

*We both win*

## Option 2

Your current bill with us is 12-14K if you cancel, according to our contract. Seeing that we are not unreasonable and admit some areas near the chimney top need to be corrected, our BOTTOM dollar is 8K, and we both walk away this is a one time offer.

*We both lose*

## Option 3

According to the terms of our contract, you will need to hire an attorney to represent you at mediation and possibly court things get messy and expensive very quickly.
*We both REALLY lose, and attorneys win*.

I vote for option one.

Sincerely,

Douglas Hetsch (Owner)
American Chimney & Fireplace
Louisville, Ky 40299
www.aachimneyservice.com
e: Doug@aachimneyservice.com
(502) 435-2364
Master Chimney Sweep #46
NCSG member, CCS # 7338
C-DET # 654, NFI # 169550



On Wed, Jan 31, 2024 at 11:00 AM Chris Quinn <kycqster@live.com> wrote:

3

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Doug –

I went back through my communication with you and Levi and I don't see where I mentioned a proposal.  If I have missed it, or if you have something in mind please let me know.

I have mentioned on two occasions my desire is to resolve this situation by parting ways and agreeing that nothing is owed by either party to the other.  If that is not agreeable I will get legal counsel involved and take whatever steps are necessary to keep others from going through the ordeal I've been through.  This has gone on way too long.  I've been without a working fireplace since August of last year.

Christopher Quinn

---

**From:** Doug <doug@aachimneyservice.com>
**Sent:** Tuesday, January 30, 2024 4:47 PM
**To:** Levi Bogue <levi@aachimneyservice.com>
**Cc:** kycqster@live.com
**Subject:** Re: questions

Chris,

We would like to get this resolved as soon as possible.

Could you please send us the proposals you mentioned?

Cordially,

4

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# F

Filed          24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

# JAMES R. MCKENZIE ATTORNEY, PLLC

115 S. Sherrin Ave Suite 5
Louisville, KY 40207
Phone (502) 371-2179   Fax (502) 257-7309

February 20, 2024

Douglas Hetsch, President
J.C. Services, LLC d/b/a
American Chimney & Fireplace
11600 Electron Drive
Louisville, KY 40299

Re: Your Job No. 28888
    My Client – Chris Quinn

Mr. Hetsch:

I am an attorney licensed to practice law in Kentucky (KBA 81957) retained by Chris Quin to
represent his interests regarding the work J.C. Services, LLC (hereafter "JCS") d/b/a American
Chimney & Fireplace chimney contracted to provide to Mr. Quinn for chimney work at his
residence located at 5315 Arrowshire Drive La Grange KY.  This letter is specifically in
response to the email sent by you on behalf of JCS dated February 19, 2024--which email
demanded payment to JCS by Mr. Quinn of $8,000 under threat of legal action if not paid.

 All future communications regarding this matter must be directed to me at the contact points
shown above.  As you are aware, it is the position of Mr. Quinn the work performed by JCS is
objectively defective in both workmanship and materials, which position Mr. Quinn previously
expressed and identified to you.  Mr. Quinn has obtained an evaluation by a professional
chimney contractor that not only substantiates his position, but also identified remedial measures
that must be taken which will include to some extent demolition, in part, of the work and
materials performed and installed by JCS.

The demand of JCS for payment of $8,000 is rejected.  A demand by Mr. Quinn for the damages
he has sustained will be forthcoming.  Mr. Quinn does not desire to resort to legal action,
however he is resolute in his position and prepared to do so, as necessary.  If you wish to discuss
this matter outside of and/or prior to legal proceedings I am authorized to do so.

1

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

Sincerely,

James McKenzie
James R McKenzie Attorney PLLC
115 S. Sherrin Ave. Suite 5
Louisville, KY 40207

2

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# G

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk



Filed                24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

**James McKenzie**



**From:** Melissa Prince <m.prince@bakerblegal.com>
**Sent:** Thursday, April 18, 2024 10:32 AM
**To:** kycqster@live.com
**Subject:** All American Chimney Services, LLC vs Chris Quinn

Good morning,

Our office represents All American Chimney Services, LLC in regards to a delinquent invoice for $24,620.47. I just spoke to Travelers Insurance and was told that you have received the funds that were allotted for this matter and that the checks have been cashed.

I am trying to get your side of the story as it appears based on the settlement offer of $8,000.00 that there is some kind of dispute going on. I would like to help get this matter resolved as soon as possible.

I am sure I do not need to tell you this , however, your insurance has issued the funds that are not your money to keep you do have a responsibility to try to work this out and come to a resolution as there was work our client performed.

Please give me a call or respond via email and let me know what we can do to work this out and why you did not take the settlement offer?

Chris Quinn Case Documents.pdf

Respectfully,
*Melissa Prince*
*Baker,Bloomberg and Associates*
20501 Katy Freeway Suite 240
Houston, TX 77450

O: (346)251-0638 direct
F: (877)690.9952 facsimile



Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

T: (855)713-7685 main
E: m.prince@bakerblegal.com


Law Office of Cris W. Craft
Attorney at Law, Of Counsel

**This electronic communication is sent as a legal record.**


This is an attempt to collect a debt and any information obtained will be used for that purpose.


**The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, transmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender by email or by telephone at (281)769 8801 and delete the material for all computers and devices.**

Filed                    24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

# EXHIBIT

# H

Filed                    24-CI-00231 04/23/2024              Stephen Kaelin, Oldham Circuit Clerk

Filed          24-CI-00231 04/23/2024          Stephen Kaelin, Oldham Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/13/2024 01:14:27
PM
89195

James McKenzie

**From:** Melissa Prince <m.prince@bakerblegal.com>
**Sent:** Thursday, April 18, 2024 10:32 AM
**To:** kycqster@live.com
**Subject:** All American Chimney Services, LLC vs Chris Quinn

Good morning,

 Our office represents All American Chimney Services, LLC in regards to a delinquent invoice for $24,620.47. I just spoke to Travelers Insurance and was told that you have received the funds that were allotted for this matter and that the checks have been cashed.

 I am trying to get your side of the story as it appears based on the settlement offer of $8,000.00 that there is some kind of dispute going on. I would like to help get this matter resolved as soon as possible.

 I am sure I do not need to tell you this , however, your insurance has issued the funds that are not your money to keep you do have a responsibility to try to work this out and come to a resolution as there was work our client performed.

 Please give me a call or respond via email and let me know what we can do to work this out and why you did not take the settlement offer?

🖼Chris Quinn Case Documents.pdf

Respectfully,

*Melissa Prince*
*Baker,Bloomberg and Associates*
20501 Katy Freeway Suite 240
Houston, TX 77450

O: (346)251-0638 direct
F: (877)690.9952 facsimile

Presiding Judge: HON. JERRY D. CROSBY II (612409)

EXH : 000002 of 000003

Filed                    24-CI-00231 04/23/2024                    Stephen Kaelin, Oldham Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/13/2024 01:14:27
PM
89195

T: **(855)713-7685 main**
E: **m.prince@bakerblegal.com**

_____

Law Office of Cris W. Craft
Attorney at Law, Of Counsel

**This electronic communication is sent as a legal record.**


This is an attempt to collect a debt and any information obtained will be used for that purpose.


**The information transmitted by this email is intended only for the person or entity to which it is addressed. This email may contain proprietary, business-confidential and/or privileged material. If you are not the intended recipient of this message, be aware that any use, review, transmission, distribution, reproduction or any action taken in reliance upon this message is strictly prohibited. If you received this in error, please contact the sender by email or by telephone at (281)769 8801 and delete the material for all computers and devices.**

Presiding Judge: HON. JERRY  D. CROSBY II (612409)

EXH : 000003 of 000003